**GLAVERBEL SOCIETE ANONYME and Fosbel, Inc., Plaintiffs/Cross–Appellants,**

v.

**NORTHLAKE MARKETING & SUPPLY, INC., Frank Zlamal, Samuel E. May, and Jim Hamilton, Defendants–Appellants.**

Nos. 92–1316, 92–1317.

United States Court of Appeals, Federal Circuit.

Jan. 23, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 2, 1995.

Jerold I. Schneider, Spencer, Frank & Schneider, Washington, DC, argued, for plaintiffs/cross-appellants. With him on brief was Brian M. Kolkowski. Also on brief was George H. Spencer.

Ronald H. Isroff, Ulmer & Berne, Cleveland, OH, was on brief, for plaintiff/cross-appellant, Fosbel, Inc.

Anthony S. DiVincenzo, Campbell & DiVincenzo, Chicago, IL, argued, for defendants-appellants. With him on brief was John C. Brezina, Brezina & Buckingham, Oak Brook, IL.

Before NEWMAN, MAYER, and CLEVENGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Northlake Marketing & Supply, Inc., Frank Zlamal, Samuel E. May, and Jim Hamilton (together "Northlake") appeal the judgment of the United States District Court for the Northern District of Indiana,[1] upholding the validity of United States Patents Nos. 3,684,560 (the '560 patent) and 4,489,022 (the '022 patent), and declining to find fraudulent procurement or that the patents were used to violate the antitrust laws. Glaverbel Société Anonyme and its exclusive licensee Fosbel, Inc. (collectively "Glaverbel") cross-appeal the grant of Northlake's motion for summary judgment of non-infringement.[2] We sustain the judgment on appeal, reverse in part the summary judgment on cross-appeal, and remand for trial of the issue of infringement.

I

## PATENT VALIDITY

### *The Patents in Suit*

The '560 and '022 patents relate to a ceramic welding process for repairing industrial furnaces. Ceramic welding is described as the process of forming a coherent refractory mass on the furnace wall. In the patented process this is achieved by projecting, against the wall of the furnace, particles of an oxidizable substance that burns exothermically and a refractory substance, whereby an exothermic reaction at the surface welds the refractory mass to the wall. Claim 1 of the '560 patent, the broadest claim, is as follows:

1. A process of forming a refractory mass comprising the steps of:

projecting against a surface particles of at least one oxidizable substance which burns by combining with oxygen with accompanying evolution of heat, said particles having an average size of less than 50 microns, and particles of at least one different substance, along with a combustion supporting gas,

at least one of said substances being of a composition such that under the heat of combustion of said oxidizable substance a coherent refractory mass is formed from said oxidizable substance and the different substance;

and burning the oxidizable substance substantially entirely while it is being projected against such surface for forming such refractory mass.

Claim 13 defines the "oxidizable substance" as aluminum, silicon, magnesium, or zirconium, and Claim 14 requires that the heat evolved by the burning step raise the temperature of the surface sufficiently to soften the surface.

The broadest claim of the '022 patent is as follows:

1. A process of forming a refractory mass comprising burning particles of exother-

---

1. *Glaverbel Société Anonyme v. Northlake Mktg. & Supply, Inc.,* No. H88–383 (N.D.Ind. March 31, 1992).

2. *Glaverbel Société Anonyme v. Northlake Mkgt. & Supply, Inc.,* No. H88–383 (N.D.Ind. March 12, 1992) (Order).

mically oxidizable material having an average grain size of less than 50 μm while mixed with particles of incombustible refractory material during projection of the mixture against a surface to form a coherent refractory mass on said surface, said oxidizable material comprises silicon and aluminum, the aluminum being present in an amount not exceeding 9% by weight of the total mixture, and wherein the aluminum and silicon are together present in an amount not exceeding 15% by weight of the total mixture.

Glaverbel describes the '022 patent as an improvement on the '560 patent, based on the use of silicon and aluminum particles in specified amount and proportions. According to Glaverbel flash-back is minimized, the completeness of the reaction is maximized, the cohesiveness of the refractory mass is improved, and the ratio of heat generated to oxidizable material used is optimized. As a result, states Glaverbel, it is no longer necessary to match the composition of the refractory mass and the furnace wall in order to obtain a satisfactory ceramic weld.

### Anticipation

■ Anticipation is a question of fact. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.,* 758 F.2d 613, 619, 225 USPQ 634, 637 (Fed.Cir.), *cert. dismissed,* 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985). When trial is to the court, the district court's finding with respect to anticipation is reviewed for clear error, with due regard to the burden and standard of proof. *Lindemann Maschinenfabrik GMBH v. American Hoist & Derrick Co.,* 730 F.2d 1452, 1458, 221 USPQ 481, 485 (Fed.Cir.1984).

■ The district court found that the '560 and '022 patents are not invalid for anticipation. Anticipation requires identity of the claimed process and a process of the prior art; the claimed process, including each step thereof, must have been described or embodied, either expressly or inherently, in a single reference. *Scripps Clinic & Research Found. v. Genentech Inc.,* 927 F.2d 1565, 1576, 18 USPQ2d 1001, 1010 (Fed.Cir.1991); *see Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1369, 21 USPQ2d 1321, 1328 (Fed.Cir.1991) ("Anticipation can occur when a claimed limitation is 'inherent' or otherwise implicit in the relevant reference.")

■ Northlake relied at trial on Swedish Patent No. 102,083 (the Swedish patent) and United States Patent No. 2,976,166 (the White patent), arguing that the claims of both of the Glaverbel patents overlap with or read on either or both of these references. The district court found that the processes described in the references are not similar to the processes of the patents in suit. Northlake argues that the '560 and '022 claims are invalid if they can be read on the prior art, even if the processes are not similar. That is, Northlake argues that the '560 and '022 claims can be interpreted so broadly that they include the prior art. Anticipation, however, requires identity of invention: the claimed invention, as described in appropriately construed claims, must be the same as that of the reference, in order to anticipate. *Continental Can Co. USA, Inc. v. Monsanto Co.,* 948 F.2d 1264, 1267, 20 USPQ2d 1746, 1748 (Fed.Cir.1991). *See also In re Spada,* 911 F.2d 705, 708, 15 USPQ2d 1655, 1657 (Fed.Cir.1990) ("the reference must describe the applicant's claimed invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it").

■ In determining whether a patented invention is anticipated, the claims are read in the context of the patent specification in which they arise and in which the invention is described. If needed to impart clarity or avoid ambiguity, the prosecution history and the prior art may also be consulted in order to ascertain whether the patentee's invention is novel or was previously known to the art. *Lindemann,* 730 F.2d at 1458, 221 USPQ at 485 ("In deciding the issue of anticipation, the trier of fact must identify the elements of the claims, determine their meaning in light of the specification and prosecution history and identify corresponding elements disclosed in the allegedly anticipating reference.") *Cf. Slimfold Mfg. Co. v. Kinkead Indus., Inc.,* 810 F.2d 1113, 1116, 1 USPQ2d 1563, 1566 (Fed.Cir.1987) (claims are not interpreted "in a vacuum").

There was testimony that the prior art processes relate to flame-spraying, not combustion at the furnace wall. The district court found that the Swedish and the White patents describe heating the refractory material with a flame and using the flame to project the material against the wall, whereas the '560 and '022 patents require an exothermic reaction wherein oxidation or burning occurs at the surface of the wall. The district court also found that the Swedish patent relates to sintering, defined as "adherence below the melting point," whereas the claimed processes relate to welding above the melting point.

Clear error has not been shown in the district court's findings concerning the prior art. It was not an incorrect methodology for the court to interpret the '560 and '022 patent claims in light of the patent specifications and the prior art and to receive the testimony of experts in the field of the invention, when comparing the patented invention with the prior art for the purpose of determining whether they were the same. *See Bischoff v. Wethered*, 76 U.S. (9 Wall.) 812, 815, 19 L.Ed. 829 (1870) ("variations, scarcely noticeable to a common reader, would be detected by an expert in the art"); *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1435–36, 7 USPQ2d 1129, 1133–34 (Fed.Cir.) (expert testimony on issue of novelty), *cert. denied*, 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988).

Northlake has not shown clear error in the finding of the district court that the claims of the '560 and '022 patents are not invalid for anticipation.

### Obviousness

■■■ Northlake states that the district court neglected to conduct a full analysis of obviousness as required by *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966). The obviousness of a patented invention is determined by applying the law of 35 U.S.C. § 103 to findings of fact relating to the scope and content of the prior art, the differences between the claimed invention and the prior art, and the level of ordinary skill in the art. *Graham*, 383 U.S. at 17, 86 S.Ct. at 693, 148

USPQ at 467. Objective evidence such as commercial success, copying, or long-felt need, is relevant, and when present must be considered. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538–39, 218 USPQ 871, 879 (Fed.Cir.1983).

■■■ The perspective from which these findings are made, as well as the ultimate question of obviousness, is that of a person of ordinary skill in the field of invention. The district court's factual findings are reviewed for clear error, and the court's rulings of law based thereon receive plenary review. *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1565–66, 1 USPQ2d 1593, 1594–95 (Fed.Cir.), *cert. denied*, 481 U.S. 1052, 107 S.Ct. 2187, 95 L.Ed.2d 843 (1987). Invalidity based on obviousness of a duly issued patent must be established by clear and convincing evidence. *Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1558, 229 USPQ 561, 562–63 (Fed.Cir.), *cert. denied*, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986).

■■■ Northlake challenges the completeness of the court's findings of the facts relating to obviousness. That criticism was not raised at trial, and the district court was not asked to make additional findings under Fed.R.Civ.P. 52(b). When a party remains silent after full trial and decision and then complains about incomplete findings, the appellate tribunal should ascertain whether any absent findings not only were essential to resolution of the issue, but were not made by the trial judge. *See Consolidated Aluminum Corp. v. Foseco International Ltd.*, 910 F.2d 804, 814 n. 9, 15 USPQ2d 1481, 1488 n. 9 (Fed.Cir.1990) ("Rule 52(b), Fed.R.Civ.P., provides for post-judgment motions for findings not made. Counsel should not simply ignore that rule and head off to the appellate court to seek a remand for the making of those same findings."); *Evans v. Suntreat Growers and Shippers Inc.*, 531 F.2d 568, 570 (Temp.Emer.Ct.App.1976) (although failure of party to propose additional or alternate findings under Rule 52(b) does not prevent party from attacking on appeal an erroneous finding, party can not complain about lack of specificity in the findings); *United States v. Tosca*, 18 F.3d 1352, 1355 (6th

Cir.1994) (discussing the "general principle of appellate jurisprudence that a party desiring more particularized findings at the trial court level must request them from the trial court").

█ In this case the district court specifically invoked the criteria of *Graham v. John Deere,* and thoroughly discussed the prior art and the differences from the Glaverbel inventions. *See Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 873, 228 USPQ 90, 98 (Fed.Cir. 1985) ("we must be convinced from the opinion that the district court actually applied *Graham* and must be presented with enough express and necessarily implied findings to know the basis of the trial court's opinion"). Northlake complains that because the district court made no explicit findings on each of the *Graham* factors, remand is mandated. Glaverbel points out that Northlake presented no evidence of the level of ordinary skill in the art or concerning the alleged similarities between the prior art and the patents in suit, or argued that there were special considerations or details with respect to these factual aspects. It was not the trial judge's burden, but that of Northlake, to point out any aspects requiring particular attention. Although remand for additional findings may be warranted in appropriate circumstances, *see Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986) (appellate court may remand for findings essential to proper resolution), an assertion that findings were incomplete must include a reasonable basis for arguing, in this case, that the district court may have had a clearly erroneous view of the level of ordinary skill or of the prior art, or that the testimony at trial, for example that presented by persons of skill in the field of the invention, may have misled the district court toward implied findings prejudicial to Northlake. Northlake has directed our attention to no clear error in the nature or completeness of the district court's findings of fact relevant to the issue of obviousness. The burden of proving invalidity was on Northlake. The district court's conclusion that the '560 and the '022 patents are not invalid on the ground of obviousness is sustained.

*Inoperability*

█ Northlake pled by counterclaim that the '560 and '022 patents do not comply with 35 U.S.C. § 101, but did not state why. One week before trial Northlake requested leave to amend its counterclaim to raise the issue of inoperability. The district court denied the request as tardily made, and again when the request was renewed at trial.

Northlake had known for over a year of the relevant facts, as shown in its offer of proof. The Northlake argument as to inoperability was as follows: the '022 claims require that the aluminum and silicon particles be present "in an amount not exceeding 15% by weight of the total mixture," but the claims do not state a lower limit; therefore the claims can include such small amounts of aluminum and silicon that they would be insufficient to serve the intended purpose. Glaverbel responded that the '022 claims require the formation of "a coherent refractory mass," thus requiring the presence of sufficient particles to form a coherent mass. We are not persuaded that justice was denied by the district court's refusal to permit Northlake to introduce this issue on the eve of or during trial; thus we discern no abuse of discretion in the court's action. *Cf. Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971) (leave to amend was properly denied in view of substantial prejudice to opponent).

## II

## ISSUES OF COMPETITION AND CONDUCT

Northlake asserted that Glaverbel procured the '560 and '022 patents through fraud and/or inequitable conduct, violated the antitrust laws, and misused the patents.

*Inequitable Conduct*

█ Failure to disclose material information during the patent procurement process or the submission of material false information, with the intent to mislead or deceive the patent examiner into granting the patent, may render the patent permanently unen-

forceable. *Scripps v. Genentech*, 927 F.2d at 1573, 18 USPQ2d at 1008. The factual premises of materiality and intent must be proved by clear and convincing evidence. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872, 9 USPQ2d 1384, 1389 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). The determination of the issue of inequitable conduct when these premises are established is within the district court's discretion, for materiality and intent must be weighed, and the consequences assessed, in light of all the circumstances. *Kingsdown*, 863 F.2d at 876, 9 USPQ2d at 1392. Thus the district court's ruling on the issue of inequitable conduct will be affirmed unless it was based on a clearly erroneous finding of fact or a misinterpretation or misapplication of law, or manifested a clear error of judgment. *Id.; Amgen, Inc. v. Chugai Pharmaceutical Co. Ltd.*, 927 F.2d 1200, 1215, 18 USPQ2d 1016, 1028 (Fed.Cir.), *cert. denied*, 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991).

■ Both the '560 and the '022 patents were reexamined by the Patent and Trademark Office at the request of Northlake. Northlake argues that material prior art references were known to Glaverbel during the initial prosecution of the '022 patent, but were not brought to the examiner's attention until Northlake requested reexamination. Northlake thus argues that both material withholding and culpable intent must be presumed from Glaverbel's failure to disclose these references during the initial prosecution, coupled with the reexamination examiner's initial rejection of the patent claims on the basis of these references.

For the '022 patent, Northlake criticizes Glaverbel for referring during the initial prosecution only to the British patent (GB '894) of which the '022 patent was an improvement, but not also referring to the United States counterpart (the '560 patent) of GB '894. We have been directed to no difference between the specifications of the GB '894 and the US '560 patents. These are essentially identical texts, one of which (GB '894) was before the United States examiner during the initial prosecution of the '022 application, and both of which (GB '894 and US '560) were before the examiner during the reexamination of the '022 patent.

Northlake concedes that "GB '894 and US '560 are essentially identical, except for the claims." However, Northlake argues that because the claims as issued in US '560 were narrower than the claims in GB '894, there was inequitable conduct in the patent office because Glaverbel made a showing of improved combustion by the '022 process, whereas combustion was already claimed as complete in GB '894. The district court did not accept this argument as establishing inequitable conduct, and we discern no error in this conclusion. The claim style or content of GB '894, presumed to be in accordance with British law, is not relevant to the issue of inequitable conduct. Neither material misrepresentation nor intent to mislead was established by Glaverbel's citation of GB '894, and not also its US '560 counterpart, during the initial prosecution of the '022 application.

■ Northlake also asserts that Glaverbel's failure to cite the Swedish patent during the initial prosecution of the '022 application constitutes inequitable conduct. Although the '022 patent claims were initially rejected during reexamination on the basis of the Swedish patent, the examiner withdrew the rejection and allowed the '022 claims. Glaverbel agreed that it knew about the Swedish patent at the time of the initial '022 prosecution, but denied the intent to mislead or deceive the examiner. Glaverbel's patent counsel, Dr. DeKeersmaecker, testified that in his opinion the Swedish patent related to a different process than the '022 process. Northlake must prove culpable intent by clear and convincing evidence. *Kingsdown*, 863 F.2d at 872, 9 USPQ2d at 1389. Northlake points to no evidence tending to show an intent to mislead or deceive.

For Glaverbel's '560 patent, Northlake asserted that because the Swedish patent was material and was not cited by Glaverbel during the '560 prosecution, Glaverbel committed inequitable conduct. The district court, rejecting this argument, referred to testimony that Glaverbel first learned of the Swedish patent four years after the '560 patent was issued, and was not aware of the Swed-

ish patent during the initial examination of the '560 patent. Northlake does not mention this testimony, or the evidence disputing the materiality of the Swedish patent. Further, as we have discussed, both materiality and intent to deceive or mislead must be shown. Clear error has not been shown in the district court's findings that materiality and intent were not established.

 Northlake also argues that Glaverbel's narrowing of the scope of the '560 claims on reexamination is, without more, probative of materiality during the initial examination. Reduction in claim scope during reexamination is not of itself probative of material withholding with intent to deceive, and supports no such inference. All of the evidence, including evidence tending to show good faith, must establish sufficient culpability to establish both materiality and intent. *Kingsdown*, 863 F.2d at 872, 9 USPQ2d at 1389. No adverse inference flows from a patentee's actions in adjusting its claims on reexamination, whether or not the patentee itself initiated the reexamination.

Northlake also asserts that Glaverbel committed inequitable conduct, during reexamination of the '560 patent, in its nondisclosure to the United States examiner of facts concerning prosecution of its corresponding foreign patents. Northlake states that Glaverbel did not inform the examiner of the rejection of the corresponding German and Danish applications based on the Swedish patent, and did not reveal that the arguments presented by Glaverbel to the United States examiner had been rejected by the German and Danish examiners. These points were explored at trial, the district court observing that one of Northlake's witnesses, Dr. Ehrman, testified that neither of Glaverbel's German patents (corresponding to the '560 and the '022 patents) was rejected for lack of novelty in view of the Swedish patent. Northlake does not attempt to explain this testimony of its own witness, despite its contrary representations on this appeal. We have been shown no basis for overturning the district court's findings on these points.

Northlake also states that Glaverbel's submission of chromium welding tests to the United States patent examiner constituted inequitable conduct, arguing that Glaverbel's tests using chromium to show the effect of grain sizes of over 50 microns were misleading. Before the district court there was conflicting testimony concerning the meaning of the tests. Northlake has not shown that material and intentional misinformation was presented to the patent examiner, or that the district court's ruling that these tests did not establish inequitable conduct was based on clearly erroneous findings of fact or misapplication or misinterpretation of law, or manifested clear error of judgment.

We discern no clear error in the district court's finding that neither materiality nor intent to deceive or mislead was proved by clear and convincing evidence. The ruling that inequitable conduct was not established is affirmed.

### Antitrust and Misuse Issues

 Northlake states that Glaverbel violated the Sherman Act, 15 U.S.C. §§ 1 and 2, by bringing and continuing this lawsuit. The bringing of a lawsuit to enforce legal rights does not of itself constitute violation of the antitrust laws or patent misuse; there must be bad faith and improper purpose in bringing the suit, in implementation of an illegal restraint of trade. *See American Tobacco Co. v. United States*, 328 U.S. 781, 809, 66 S.Ct. 1125, 1138, 90 L.Ed. 1575 (1946) (otherwise lawful acts, when done to give effect to conspiracy to restrain trade, are forbidden); *Grip–Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 472 (7th Cir.1982) (even if a lawsuit has a colorable basis, it can violate the antitrust laws if filed for an improper purpose), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983). A purpose is improper if its goal is not to win a favorable judgment, but to harass a competitor and deter others from competition, by engaging the litigation process itself, regardless of the outcome. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, —— U.S. ——, ——, 113 S.Ct. 1920, 1928, 123 L.Ed.2d 611, 26 USPQ2d 1641, 1646 (1993) ("sham" litigation must be "objectively baseless" and intended to use the litigation process to interfere directly with a competitor's business); *Carroll Touch,*

*Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573, 1581–83 (Fed.Cir.1993) (rejecting claim that filing a lawsuit was part of a scheme to restrain and monopolize trade, invoking the *Noerr–Pennington* immunity rule). *See also, e.g., Loctite,* 781 F.2d at 875, 228 USPQ at 100 (Under Seventh Circuit law, "[t]o establish an illegal attempt to monopolize, plaintiff must prove: (1) a specific intent to monopolize; and (2) a dangerous probability that the attempt would be successful in achieving a monopoly in the relevant market.... Had [the district court] found bad faith [here], it would have had to make specific findings defining the relevant geographic and product markets, and specifying the market share possessed by Loctite in the relevant market.")

■■■ The district court held that Northlake had not met its burden of demonstrating bad faith and improper purpose by Glaverbel in bringing this infringement suit, and did not discuss other elements of antitrust violation or patent misuse. Northlake now argues that even if bad faith in use of the litigation process were not shown, Glaverbel violated the antitrust laws because Glaverbel knew that its patents were invalid and not infringed when it brought suit, referring to the district court's summary judgment of non-infringement, discussed *post.* Northlake suggests that this litigation was part of an illicit scheme to monopolize the ceramic welding market.

The district court found, and Northlake does not challenge, that Northlake did not dispute the accuracy of the test results on Northlake products, that were sent by Glaverbel to Northlake before this infringement suit was filed. Glaverbel had explained to Northlake how certain Northlake formulations infringed the claims of the '560 and the '022 patents, and invited Northlake to join with Glaverbel in determining "whether there is grounds for a resolution of this matter short of litigation." The district court's ruling that there was not bad faith by Glaverbel in filing or continuing the lawsuit was supported by Northlake's own witnesses, who did not unequivocally deny infringement. Northlake's charge of improper purpose was correctly rejected by the district court.

■■■ Northlake also states that it is being sued by Glaverbel in other countries for violation of Glaverbel's foreign patents on the same technology, and that the cost is "crippling." Parties who engage in international business may indeed encounter litigation in foreign courts; such actions, and their cost and consequences, do not of themselves constitute violation of the Sherman Act. It was Northlake's burden to show, *inter alia,* that Glaverbel's purpose was to harass Northlake in bad faith and regardless of the outcome. We have been directed to no evidence to this effect.

The determination that the antitrust and misuse laws were not violated is affirmed.

## III

## INFRINGEMENT

■■■ Glaverbel has cross-appealed from the district court's grant of Northlake's motion for summary judgment of non-infringement of the '022 and the '560 patents. We give plenary review to whether the issue was appropriately disposed of by summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Stark v. Advanced Magnetics, Inc.,* 29 F.3d 1570, 1573, 31 USPQ2d 1290, 1292 (Fed.Cir.1994).

The district court held that Northlake's motion did not meet the requirements of Fed.R.Civ.P. 56(c) and (e), but nonetheless granted summary judgment in favor of Northlake. The district court held that since Glaverbel bore the burden of proving infringement, summary judgment would be entered against Glaverbel since it made an inadequately supported response to Northlake's inadequately supported motion. Glaverbel states that this was an improper shifting of the burdens on summary judgment; Glaverbel also states that it did meet the burden that the court placed upon it.

### Northlake's Motion

Northlake's "Motion for Summary Judgment on the Issue of Infringement" was as follows:

Now come defendants and respectfully request that the Court enter an order that:

1. Patent No. 4,489,022 is not infringed by using a process wherein the components are Si and Al together being present in an amount exceeding 15% and/or the Al is present in an amount exceeding 9% of the ceramic welding mix.

2. The following samples tested by or on behalf of Glaverbel do not infringe 4,489,-022: Tests identified as Exhibit B, document # 1605; Exhibit C, document # 1585; Exhibit D, document # 1589; and Exhibit E, document # 1599.

3. That Patent No. 3,684,560 is not infringed by use of Si powder identified as 140 U.S. mesh used with Al powders having an average grain size exceeding 50 microns.

4. The Patent No. 3,684,560 is not infringed by use of Si powder identified as 200 U.S. mesh used with Al powders having an average grain size exceeding 50 microns.

5. The formulation tested by or on behalf of Glaverbel, identified as Exhibit E, document # 1599, does not infringe 3,684,560.

The motion was accompanied, *inter alia,* by the referenced Exhibits B, C, D, and E, which were documents that Northlake had obtained from Glaverbel, containing the results of Glaverbel's tests of the four Northlake samples that are the subject of paragraphs 2 and 5. Northlake submitted no tests concerning the formulations described in paragraphs 1, 3, and 4.

### *Paragraphs 2 and 5*

Glaverbel conceded that the samples of Exhibits B and C do not infringe the '022 patent. Glaverbel also conceded that the sample of Exhibit E does not infringe either the '022 or the '560 patent. The only other sample for which tests were submitted by Northlake was that of Exhibit D.

■ The purpose of summary judgment is to avoid an unnecessary trial, by enabling an expeditious procedure whereby, for issues on which there is no material factual dispute, the court can decide the controversy by applying the law to the undisputed facts. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Continental Can,* 948 F.2d at 1265, 20 USPQ2d at 1747. Rule 56 is a vehicle of convenience to parties and courts, for use when the circumstances warrant; but it is not a substitute for trial when decision of the controversy requires resolution of disputed factual issues. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (Rule 56 must be construed with due regard both to those persons entitled to trial and to those persons demonstrating that the claims have no factual basis.); *Dahnke v. Teamsters Local 695,* 906 F.2d 1192, 1195 (7th Cir.1990) (doubt as to the existence of a material issue of fact is resolved against the movant).[3]

As discussed in *Celotex,* the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56(c)). In response, "the nonmoving party [must] go beyond the pleading and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* The initial burden is on the moving party. *See id.* at 325, 106 S.Ct. at 2553 ("Rule 56(e) was not designed to modify the burden of making the showing generally required by Rule 56(c)") (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)). When the movant's burden of establishing the lack of a genuine issue of material fact has been met "in facial terms," the nonmovant must point to "some evidence in the

3. The Federal Circuit follows the discernable law of the regional circuit in procedural matters that are not unique to patent law. *Allen Organ Co. v. Kimball Int'l, Inc.,* 839 F.2d 1556, 1563, 5 USPQ2d 1769, 1774 (Fed.Cir.), *cert. denied,* 488 U.S. 850, 109 S.Ct. 132, 102 L.Ed.2d 104 (1988). Thus for general procedure and practice under Rule 56 we look to the Seventh Circuit for precedential guidance.

record sufficient to suggest that his view of the issue might be adopted by a reasonable factfinder." *Resolution Trust Corp. v. Juergens,* 965 F.2d 149, 151 (7th Cir.1992).[4]

Thus Northlake bore the initial burden of showing that there was an absence of evidence to support Glaverbel's cause. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. The district court, applying Rule 56(e),[5] rejected all of Northlake's exhibits as inadmissible, explaining that:

> [T]he defendants have submitted several exhibits without any authentication including uncertified file history records, applications, test results allegedly performed by the plaintiffs, and other test results and reports written in French. Although the plaintiffs did not object to the unauthenticated exhibits, the defendants' attorney cannot authenticate and interpret these tests by arguments made in his brief. Since the defendants have not submitted any authentication or translation, these documents cannot be considered admissible evidence.

Order at 7.

■ In reviewing whether Northlake met the requirements of Rule 56, we need not address the evidence on the formulations in Exhibits B, C, and E, in view of Glaverbel's concession of noninfringement with respect to those formulations. Concerning the formulation described in Exhibit D, the district court ruled that Exhibit D was inadmissible,

stating that "[e]xhibits which are offered with a motion for summary judgment must be identified by affidavits or otherwise admissible into evidence." Order at 6. However, Exhibit D appears to be an exhibit accompanying Mr. Mottet's deposition testimony, and apparently was received for that purpose without objection. The Seventh Circuit has stated that the trial court, in a summary judgment proceeding, may consider exhibits made a part of a deposition record. *Colan v. Cutler–Hammer, Inc.,* 812 F.2d 357, 365 n. 14 (7th Cir.), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987). Thus Exhibit D should have been considered.

*Paragraphs 1, 3, and 4*

■ Paragraphs 1, 3, and 4 in Northlake's motion asked the court to set limits to the patent claims, independent of any specific formulation or product in controversy. The district court did not discuss these paragraphs, but simply granted Northlake's motion in its entirety. These portions of Northlake's summary judgment motion were not described as having any support in terms of Rule 56(c) and (e). The potentially relevant exhibits were variously described by the district court as unauthenticated or uncertified or written in French without translation, and Northlake does not argue that they met the requirements of Rule 56. In addition, Northlake did not relate its general requests in paragraphs 1, 3, and 4 to any specific formu-

4. Other circuits are in accord. *See, e.g., Federal Deposit Insurance Corp. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (movant always bears the "burden of production" of informing the court the basis for its motion showing the absence of a genuine issue of fact); *Green v. Whiteco Industries, Inc.,* 17 F.3d 199, 202 (7th Cir.1994) ("once [the movant] pointed out to the court that there was no evidence [to support the nonmovant's case, the nonmovant] then had the burden of countering this"); *LeBlanc v. Great American Insurance Co.,* 6 F.3d 836, 841 (1st Cir.1993) (the "onus" initially falls on the moving party to demonstrate the absence of evidence to support the nonmovant's case); *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir.1993) (after moving party has satisfied burden of demonstrating that no genuine issue of material fact exists, the burden shifts to the nonmoving party).

5. Fed.R.Civ.P. 56(e). **Form of Affidavits; Further Testimony; Defense Required.**

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

lation supported by relevant evidence. *See Metalex Corp. v. Uniden Corp. of America,* 863 F.2d 1331, 1336–37 (7th Cir.1988) (party's argument on the substance of affidavit offered in support of summary judgment motion is "no substitute for evidence").

At most, Northlake met its initial burden as the movant with respect to the formulation of Exhibit D. As to paragraphs 1, 3, and 4, Northlake did not shift to Glaverbel the burden of coming forward with evidence in response; the grant of summary judgment as to the subject matter of paragraphs 1, 3, and 4 was improper.

### Glaverbel's Response—Exhibit D

 Responding to the motion with respect to Exhibit D, Glaverbel's attorney stated that "[the '022 patent] is infringed under the doctrine of equivalents. The test indicates 10.65% aluminum which is more than the literal number of 9% in the patent claim. But the result of using the powder is exactly the same." Although the official record is incomplete, it appears that Glaverbel offered no evidentiary support for its assertion of equivalency. There must be sufficient substance, other than attorney argument, to show that the issue requires trial. *Scherer v. Rockwell Int'l Corp.,* 975 F.2d 356, 361 (7th Cir.1992) ("Argument is not evidence upon which to base a denial of summary judgment.") *See Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514 ("the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment").

We conclude that the district court correctly held that Glaverbel failed to demonstrate that there was a triable issue of fact as to the formulation in Exhibit D with respect to the '022 patent. Summary judgment of noninfringement of the '022 patent by the formulation in Exhibit D was correctly granted by the district court. As discussed *supra,* since Glaverbel conceded noninfringement as to the other formulations in paragraphs 2 and 5 of the motion, summary judgment was properly granted as to those paragraphs.

Northlake requested partial summary judgment as to specific formulations.

However, as granted, the judgment encompassed all of Northlake's formulations, whether or not they were included in the motion. This was incorrect. *See Edwards v. Honeywell, Inc.,* 960 F.2d 673, 674 (7th Cir. 1992) (district court cannot grant summary judgment on a ground to which the nonmovant was given "either an inadequate opportunity or no opportunity to respond"). The summary judgment is limited to the four specific formulations of Exhibits B, C, D, and E, and to the patents identified in the relevant portions of the motion.

### Summary

The district court's judgment on the issues of validity and enforceability is affirmed. The summary judgment of noninfringement is affirmed as to paragraphs 2 and 5 of the motion. In all other respects the summary judgment is reversed. The cause is remanded for further proceedings consistent herewith.

Costs in favor of Glaverbel.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*