QUANTACHROME CORPORATION, Plaintiff,

v.

MICROMERITICS INSTRUMENT CORPORATION, Defendant.

No. 96–8224–Civ–GONZALEZ.

United States District Court, S.D. Florida.

Feb. 17, 1999.

Barry R. Davidson, Coll Davidson Smith Salter & Barkett, Miami, FL, Michael J. Higer, Ress Mintz & Truppman, North Miami, FL, for plaintiff.

Connis O. Brown, III, Gunster Yoakley Valdes–Fauli & Stewart, Fort Lauderdale, FL, Albert S. Anderson, Patent Law Offices of Albert S. Anderson, Norcross, GA, Donald J. Beuttenmuller, Jr., Gunster Yoakley Valdes–Fauli & Stewart, West Palm Beach, FL, for defendant.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon the following motions:

1. Quantachrome's Motion for Summary Judgment, filed October 21, 1998 (D.E.# 70);

2. Micromeritics' Motion for Summary Judgment of Liability, filed December 7, 1998 (D.E.# 90);

3. Micromeritics' Motion for Partial Summary Judgment, filed December 7, 1998 (D.E.# 91); and

4. Quantachrome'S Cross Motion for Summary Judgment, filed December 31, 1998 (D.E.# 97).

The parties have briefed the Motions fully, and the Court heard oral argument of counsel on Friday, January 22, 1999. The Motions are now ripe for disposition.

## I. BACKGROUND

This is a suit originally brought by Quantachrome for declaratory judgment of non-infringement of Micromeritics' patent and of invalidity of the same. Micromeritics counterclaimed alleging infringement of its patent.

Quantachrome and Micromeritics are companies engaged in the manufacture of pycnometers. In short, a pycnometer is a device that measures the volume of a solid substance by using a type of gas displacement analysis. This volume measurement is in turn used to determine the density of the substance.

Micromeritics is the holder of United States Patent No. 5,074,146 (the "'146 Patent"). The patent was obtained in 1991. The patent professes that it is an improvement over previous pycnometers because it allows a greater degree of precision that is "sorely needed if the measured density is to function as an identification parameter, a composition descriptor, an indicator of adulterations or a detector of voids." '146 Patent, col. 1, lines 28–31.

Quantachrome manufactures a device labeled the Ultrapycnometer 1000 (the "accused device"). *See* Photograph of inside of Ultrapycnometer 1000, attached as Exhibit A. Micromeritics alleges that the Ul-

trapynometer 1000 infringes the '146 Patent.

Presently, Quantachrome has moved for summary judgment of non-infringement of the '146 Patent. Micromeritics has moved for summary judgment of infringement of the '146 Patent. Micromeritics has also moved for partial summary judgment that the claim element "vent means for venting either of said chambers to atmosphere" in Claim 27 of the '146 Patent is present in the Ultrapycnometer 1000. Quantachrome has cross-moved for summary judgment of non-infringement as to Claim 27 and all other claims containing the "either" element.

## II. SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Court must "view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir.1997) (citation omitted).

The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita*, 475 U.S. at 586 n. 11, 106 S.Ct. 1348.

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (internal citations omitted).

Additionally, in a patent case, the owner of the patent always has the burden to prove infringement. *Under Sea Industries, Inc. v. Dacor Corp.*, 833 F.2d 1551, 1557 (Fed.Cir.1987).

However, if a party challenges a patent's validity, that party has the burden to show invalidity by clear and convincing evidence. *National Presto Indus. v. West Bend Co.*, 76 F.3d 1185, 1189 (Fed.Cir.1996). A patent is presumed to be valid. 35 U.S.C. § 282 (Supp.1998).

The Federal Circuit has repeatedly admonished that district courts should approach summary judgment on the fact issue of infringement with great care. *E.g.*, *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1557 (Fed.Cir.1996). However, summary judgment is appropriate when no genuine issue of material fact exists and no

expert testimony is necessary to explain the nature of the patented invention or the accused product or to assist in their comparison. *Id.* at 1557–58.

## III. DISCUSSION

A determination of patent infringement uses a two-step analysis. First, the meaning and scope of the patent claim alleged to be infringed must be defined. *Smith-Kline Diagnostics v. Helena Laboratories Corp.,* 859 F.2d 878, 889 (Fed.Cir.1988). This is a legal determination to be made by the Court. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 372, 384–391, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Second, the finder of fact must determine whether the claim as interpreted encompasses the accused device. *Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 528 (Fed.Cir.1996). As discussed above, where there is no issue of material fact, this is a determination that the Court may make upon a motion for summary judgment. *Under Sea Industries,* 833 F.2d at 1557.

Infringement of one claim infringes the entire patent. *Intervet America v. Kee-Vet Laboratories,* 887 F.2d 1050, 1055 (Fed.Cir.1989). To establish infringement, every element set forth in a patented claim must be found in the accused product. *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1577 (Fed.Cir.1989); *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 935 (Fed.Cir.1987) (*en banc*).

If the accused device contains all of the elements recited in the claim, infringement is literal. *Cole,* 102 F.3d at 532. If one or more elements do not directly read on the accused device, infringement may still be found under the doctrine of equivalents. *Pennwalt Corp.,* 833 F.2d at 934. For purposes of the present Motions, the Court will only consider literal infringement.

Quantachrome has moved for summary judgment that the accused device does not infringe the asserted patent claims numbered 1, 2, 19, 27, 28, 30, and 31. Micromeritics has moved for summary judgment that the accused device infringes Claim 27.

The Court finds it necessary only to address Claim 27 in this Order.

Claim 27 contains seven limitations (claim elements).[1] Quantachrome concedes that six of the elements in Claim 27 are found in the accused device. Quantachrome claims, however, that one of those elements, the element that the Court has labeled "(f)," is not found in the accused device. Quantachrome further claims that another element, the element labeled "(c)," was precipitated by the prior art, and therefore, the patent is invalid. The Court shall discuss each of these arguments in turn.

### A. THE "EITHER OF SAID CHAMBERS" ELEMENT

Element (f) of Claim 27 defines "a vent means for venting either of said chambers to atmosphere." Quantachrome argues that this element is not literally found in the accused device.

Quantachrome argues that the claim language indicates that the vent means is capable of venting either the sample or the expansion chamber, *each mutually exclusive of the other,* to atmosphere. Quantachrome states that the accused device cannot vent either chamber mutually exclusive

---

1. In its Motion, Micromeritics refers to these seven elements by letter prefixes (a)–(f). These letter prefixes are not present in the patent. For purposes of clarity, the Court will refer to these same letter prefixes. With the addition of the letter prefixes, Claim 27 reads as follows:

27. A pycnometer apparatus comprising
(a) a sample chamber;
(b) an expansion chamber connected by a passageway to said sample chamber,

(c) said sample and expansion chambers being positioned within an integral environment of high thermal conductivity;
(d) gas supply means for introducing a gas under pressure into one of said chambers;
(e) valve means for controlling flow of gas through said passageway;
(f) vent means for venting either of said chambers to atmosphere; and
(g) means for measuring the pressure of said gas within said one of said chambers.

of the other. Rather, to vent the sample chamber of the accused device, one must also vent the expansion chamber. *See* Ultrapycnometer Flow Diagram, attached as Exhibit B.[2] The sample chamber vents to the expansion chamber which then vents to the atmosphere.

Micromeritics argues that the "either of said chambers" language does not indicate a means for venting one chamber mutually exclusive of the other. Rather, Micromeritics argues that the "either" language means that in different embodiments of the invention, either the sample chamber or the expansion chamber is capable of being vented to atmosphere.

Section 35 U.S.C. 112 ¶ 6 provides direction in interpreting an element of a claim framed in what is commonly known as "means-plus-function" language.[3] As the Federal Circuit stated in *Pennwalt Corp.,*

> To determine whether a claim limitation is met literally, where expressed as a means for performing a stated function, the court must compare the accused structure with the disclosed structure, and must find equivalent structure as well as identity of claimed function for that structure. 833 F.2d at 934 (discussing 35 U.S.C. § 112 ¶ 6).

In the '146 Patent the specification discusses alternate embodiments of the invention. *See* '146 Patent, col. 2, lines 31–38. In the preferred embodiment, gas is introduced into the sample chamber and then eventually vented to atmosphere through the expansion chamber. '146 Patent, col. 2, lines 31–35; col. 4, lines 61–68. In an alternate embodiment, gas is introduced into the expansion chamber and then eventually vented to atmosphere through the

sample chamber. '146 Patent, col. 2, lines 35–40. Thus, the Court finds that "either" means that either the sample chamber or the expansion chamber is capable of being vented to atmosphere depending on the embodiment.

This claim interpretation is strengthened upon further reviewing the description of the preferred embodiment discussed in the patent specification. '146 Patent, col. 4, lines 31–68. It is obvious from the specification that the means discussed is not capable of venting either chamber mutually exclusive of the other.

Also, Fig. 5, included in the '146 Patent, and attached hereto as Exhibit C,[4] unmistakably indicates that the invention vents only through one of the chambers. In that figure, it is plain that the '146 Patent invention vents in exactly the same manner as the accused device.

The Court has considered Quantachrome's other arguments presented in its briefs and at the hearing, and the Court is unpersuaded by any of these arguments that element (f) requires that each chamber be capable of venting mutually exclusive of the other.

■ Therefore, after carefully analyzing the language of Claim 27 in light of the patent specification, and comparing the Ultrapycnometer Flow Diagram (Exhibit B) with Fig. 5 of the '146 Patent (Exhibit C), the Court finds that Element (f) of Claim 27 of the '146 Patent ("vent means for venting either of said chambers to atmosphere") reads on the accused device.

Since this element is the only element of Claim 27 that Quantachrome asserts does not read on the accused device, the Court

---

**2.** For purposes of clarification, the Court has labeled on Exhibit B what it refers to as the "sample chamber" and the "expansion chamber."

**3.** Section 112 ¶ 6 states:

An element in a claim for a combination may be expressed as a means or step for performing a special function without the recital of structure, material, or acts in sup-

port thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the patent specification and equivalents thereof. 35 U.S.C. 112 ¶ 6 (1984).

**4.** The Court has again labeled the sample chamber and the expansion chamber on Exhibit C.

finds that Claim 27 as a whole reads on the accused device.

However, Quantachrome argues that even if Claim 27 reads on the accused device, there is no infringement because the '146 Patent is invalid as anticipated by the prior art.

## B. THE "INTEGRAL ENVIRONMENT OF HIGH THERMAL CONDUCTIVITY" ELEMENT AND THE PRIOR ART

■ In opposition to Micromeritics' Motion for Summary Judgment, Quantachrome asserts that the prior art anticipated Claim 27. Specifically, Quantachrome contends that its own device, the Stereopycnometer, is prior art that anticipated Claim 27. *See* Exhibit D.

A patent is invalid if it is anticipated by the prior art. 35 U.S.C. § 102. Anticipation requires identity of invention. *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*, 45 F.3d 1550, 1554 (1995). The claimed invention, as described in appropriately construed claims, must be the same as the referenced device in order to be anticipated. *Id.* In other words, a device claimed to anticipate must possess every element set forth in a patented claim. "That which infringes, if later, would anticipate, if earlier." *Peters v. Active Manufacturing Co.*, 129 U.S. 530, 537, 9 S.Ct. 389, 392, 32 L.Ed. 738 (1889).

Quantachrome asserts that if the Court accepts Micromeritics' interpretation of element (f), then Claim 27 is anticipated by the Stereopycnometer. The only element at issue for purposes of this argument is element "(c)" which states, "said sample and expansion chambers being positioned within *an integral environment of high*

*thermal conductivity* [.]" (emphasis added). Quantachrome claims that this element, and all other elements of Claim 27, read on the Stereopycnometer,[5] a pycnometer it says was first produced in March 1982, well prior to the '146 Patent filing date.

Quantachrome argues that element (c) is present in the Stereopycnometer because the sample chamber and the expansion chamber are positioned within an environment of high thermal conductivity. Exhibit D shows a photograph of the sample and expansion chambers of the Stereopycnometer. Quantachrome asserts that these chambers are constructed of materials of high thermal conductivity,[6] that the two chambers are in direct contact with each other, and that they are also held in direct contact by a stainless steel bracket.

From Exhibit D it is not clear whether the two chambers are in direct contact with each other. At the summary judgment hearing, counsel for Quantachrome displayed to the Court a Stereopycnometer in which the two chambers were in fact touching each other as well as being held in contact by the stainless steel bar.[7]

Before determining whether the Stereopycnometer anticipates Claim 27, the Court must determine whether the Stereopycnometer is indeed prior art. Prior art is "any relevant knowledge, acts, descriptions and patents which pertain to, but predate, invention in question." *Black's Law Dictionary* 1193 (6th ed.1990). Assuming for purposes of these Motions only that the Stereopycnometer in the embodiment Quantachrome presented at the summary judgment hearing was produced in 1982, the Court finds that the Stereopyc-

---

5. Quantachrome concedes that if the Court accepts Micromeritics' interpretation of element (f), Claim 27 also reads on the accused device.

6. The sample chamber is made of stainless steel, and the expansion chamber is made of copper.

7. Micromeritics introduced another Stereopycnometer in which the two chambers were

not actually touching each other, but in which the two chambers were held in direct contact with each other by virtue of the stainless steel bar. As shall be made clear, *infra*, the Court finds that it makes no difference whether the two chambers touch each other or not for purposes of creating an integral environment of high thermal conductivity.

nometer is prior art under 35 U.S.C. § 102.

Next, the Court must determine whether the limitations found in Claim 27 read on the Stereopycnometer. The Court finds that element (c) does not read on the Stereopycnometer.

The Court finds that the sample and expansion chambers of the Stereopycnometer are not positioned within an integral environment of high thermal conductivity. Even though the two chambers are in contact by touching each other and by virtue of the metal bar, this does not create such an integral environment.

The "environment" is the totality of the circumstances, conditions, influences, or forces surrounding the sample and expansion chambers that affect temperature control. *See, e.g., Webster's Third New International Dictionary* 760 (1976). To be "integral," that which is in the environment and affects temperature control must form part of the whole—i.e., be formed as a unit. *E.g., id.* at 1173.

. The Court finds that the sample and expansion chambers of the Stereopycnometer are not positioned within such an integral environment. In the Stereopycnometer, there exists a substantial amount of air in the environment. In an integral environment of high thermal conductivity, such amounts of air are not present, since air is not a material of high thermal conductivity.

In addition, the material and equipment that control and affect temperature are not all formed as a unit within the environment.

Even if the environment in which the Stereopycnometer's sample and expansion chambers are situated is one of uniform temperature, the Court finds that is still not an "integral" environment as required by Claim 27. Claim 27 does not state, "said sample and expansion chambers be-

ing positioned within an environment of uniform temperature." Rather, Claim 27 requires that the two chambers be positioned within an integral environment of high thermal conductivity.

In the accused device and the invention, the sample and expansion chambers are positioned completely within such an integral environment. In both the accused device and the preferred embodiment of the invention, this integral environment is created by placing the two chambers in a single block of material of high thermal conductivity. *See* Exhibit A.[8] The Stereopycnometer's sample and expansion chambers are not positioned within such an environment. *See* Exhibit D.

Therefore, looking at the evidence in the light most favorable to Quantachrome as the nonmovant on Micromeritics' Motion for Summary Judgment, the Court finds that the prior art Stereopycnometer displays two chambers, a sample chamber and an expansion chamber, in substantial contact with each other. However, the Court also finds that these two chambers, although in contact with one another, are not positioned within an integral environment of high thermal conductivity.

Accordingly, although the Stereopycnometer is prior art, it does not anticipate Claim 27.

## IV. CONCLUSION

The Court finds that all of the claim limitations of Claim 27 of the '146 Patent are present in the Ultrapycnometer 1000. The Court also finds that Claim 27 of the '146 Patent is not anticipated by the prior art in the form of the Stereopycnometer.

Therefore, the Court finds that the accused device, Quantachrome's Ultrapycnometer 1000, infringes U.S. Patent No.

---

8. By referring to the single block embodiment of the invention and the accused device, the Court is not intimating that such a single block design is necessary to create an integral environment of high thermal conductivity.

The Court merely finds that the design of the Stereopycnometer in which the two chambers are housed separately (even if in contact with each other) does not create an integral environment of high thermal conductivity.

5,074,146, as confirmed by Reexamination Certificate B1 5,074,146.

Accordingly, having reviewed the Motions and the record, and being otherwise duly advised, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Quantachrome's Motion for Summary Judgment, filed October 21, 1998 (D.E.# 70) is **DENIED;**

2. Micromeritics' Motion for Summary Judgment of Liability, filed December 7, 1998 (D.E.# 90) is **GRANTED** insofar as it seeks summary judgment that the Ultrapycnometer 1000 infringes the '146 Patent;

3. Micromeritics' Motion for Partial Summary Judgment, filed December 7, 1998 (D.E.# 91) is **DENIED AS MOOT;** and

4. Quantachrome'S Cross Motion for Summary Judgment, filed December 31, 1998 (D.E.# 97) is **DENIED.**

It is **FURTHER ORDERED** that Quantachrome Corporation is hereby **PERMANENTLY ENJOINED** from further infringement of the '146 Patent.

Exhibit A

Ultrapycnometer 1000

Exhibit B

ULTRAPYCNOMETER FLOW DIAGRAM

Exhibit C

Fig. 5

Stereopycnometer